ERIC GRANT
United States Attorney
JOSEPH D. BARTON
CODY S. CHAPPLE
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DAVID HARDCASTLE,<br>Defendant. | CASE NOS.<br>PLEA AGREEMENT |

## I. INTRODUCTION

### A. Scope of Agreement.

This Plea Agreement resolves two separate cases against the defendant, David Hardcastle. The first case is *United States v. David Hardcastle*, 1:25-cr-00016-JLT-SKO (E.D. Cal.), which involves a company he operated called Startop Investments (the "Startop Case"). The Indictment in that case charges him with one count of conspiring to commit wire fraud in violation of 18 U.S.C. § 1349 and five counts of substantive wire fraud in violation of 18 U.S.C. § 1343. The second case is a currently uncharged case that involves a company he operated called Voyager Pacific Capital Management (the "Voyager Case"). The Information in that case will charge him with one count of conspiring to commit wire fraud in violation of 18 U.S.C. § 1349. The parties agree the cases should be sentenced together.

This document contains the complete Plea Agreement between the United States Attorney's Office for the Eastern District of California and the defendant regarding the two cases. This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of California (hereinafter, the "government") and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.    Court Not a Party.**

The Court is not a party to this Plea Agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration all facts and circumstances concerning the criminal activities of the defendant. This includes activities that may not have been charged. The Court is under no obligation to accept any recommendations made by the parties, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement.

If the Court should impose any sentence up to the maximum, the defendant cannot, for that reason alone, withdraw his guilty plea and he will remain bound to fulfill all the obligations under this Plea Agreement. The defendant agrees the prosecutor, defense counsel, and the Court cannot make a binding prediction or promise regarding the sentence he receives.

## II.    DEFENDANT'S OBLIGATIONS

**A.    Guilty Plea.**

The defendant will plead guilty to one count of conspiring to commit wire fraud in violation of 18 U.S.C. § 1349 in each of the Startop and Voyager Cases for a total of two counts. The defendant agrees that he is in fact guilty of these crimes and that the facts set forth in the Factual Basis for Plea attached as Exhibit A are accurate.

The defendant agrees that this Plea Agreement will be filed with the Court and become a part of the record. The defendant agrees that he will not be allowed to withdraw his guilty plea should the Court not follow the parties' sentencing recommendations.

The defendant agrees that the statements made by him in signing this Plea Agreement, including the factual admissions set forth in the Factual Basis for Plea, shall be admissible and useable against him by the government in any subsequent criminal or civil proceedings even if he fails to enter a guilty plea

pursuant to this Plea Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 to the extent that these rules are inconsistent with this paragraph or with this Plea Agreement generally.

Regarding the Voyager Case, the defendant agrees that, under the United States Constitution, he is entitled to be indicted by a grand jury on the charge to which he is pleading guilty. Pursuant to Fed. R. Crim. P. 7(b), he also agrees to waive all rights he has to being prosecuted by Indictment to the charge in the Information. He will sign a waiver of prosecution by Indictment and consent to proceed by Information at the appropriate time.

### B.  Restitution.

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. The defendant agrees that his misconduct is governed by the Mandatory Victim Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and that he will pay the full amount of any restitution owed to the victims of his offenses as the Court may determine pursuant to the procedures in 18 U.S.C. § 3664. The amount of restitution in the Startop Case will not exceed $20,000,000, and the amount of restitution in the Voyager Case will not exceed $24,999,999.

The defendant will not sell, encumber, transfer, convey, or otherwise dispose of any of his assets without the prior written consent of the United States Attorney, except that the defendant may sell, transfer, or convey personal property, including used vehicles and personal items, but not financial instruments or ownership interests in business entities, with an aggregate value of less than $5,000, until his restitution is satisfied. The defendant may also pay bona fide legal fees that he incurs without the prior written consent of the United States Attorney.

The defendant agrees that he will not seek to discharge any restitution obligation in a bankruptcy proceeding. The defendant also agrees that this Plea Agreement will be violated and voidable at the option of the government if he fails to pay restitution.

### C.  Fine.

The parties agree that no fine is appropriate.

///

///

**D.     Special Assessment.**

The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering a check or money order, payable to the United States District Court, to the United States Probation Office before the sentencing hearing. He also agrees that this Plea Agreement is violated and voidable at the option of the government if he fails to pay the assessment prior to that hearing.

**E.     Violation of Plea Agreement and Withdrawal of Plea.**

If the defendant violates this Plea Agreement in any way, withdraws his plea, or tries to withdraw his plea, this Plea Agreement is violated and voidable at the option of the government. If the government voids the Plea Agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates a plea agreement by committing any crime, or providing or procuring any statement or testimony that is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in his case, or engaging in any post-plea misconduct constituting obstruction of justice. Except as otherwise permitted in this Plea Agreement, varying from stipulated United States Sentencing Guidelines ("USSG") application or agreements, personally or through counsel, also constitutes a violation of the agreement. Upon such violation, the government will have the right to prosecute the defendant on the counts to which he pleaded guilty and file any new charges that would otherwise be barred by this Plea Agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the government.

By signing this Plea Agreement, the defendant agrees to waive any objections, motions, and defenses that he may have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this Plea Agreement may be commenced in accordance with this paragraph notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of any such prosecutions. The defendant also agrees not to raise any objections based on the passage of time with respect to such counts, including any statutes of limitation or the Speedy Trial Act or Speedy Trial Clause of the Sixth Amendment. The determination whether the defendant violated the Plea Agreement will be by a probable cause standard.

4

In addition, all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, regarding the matters contained in the Factual Basis for Plea, whether before or after this Plea Agreement is executed, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against him.  The defendant shall assert no claim under the United States Constitution, any statute, Fed. R. Crim. P. 11(f), Fed. Rule Evid. 410, or any other federal rule that statements made by him before or after this Plea Agreement is executed, or any leads derived therefrom, should be suppressed.  By signing this Plea Agreement, the defendant waives all rights in the foregoing respects.

F. **Forfeiture**

The parties agree that no forfeiture is appropriate.

G. **Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and he will complete the government's "Authorization to Release Information" and "Financial Disclosure Statement" within three weeks from the entry of his change of plea, including supporting documentation.  The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if he fails to complete truthfully and provide the described documentation to the government within the allotted time, he will be considered in violation of the Plea Agreement, and the government shall be entitled to the remedies set forth in section II.E above.

The defendant expressly authorizes the government to obtain a credit report for him.  The defendant also authorizes the government to inspect and copy all documents and information regarding him that is held by the Probation Office.

### III. GOVERNMENT'S OBLIGATIONS

A. **Other Charges.**

The government agrees not to bring any other charges arising from the misconduct outlined in the Factual Basis for Plea except as provided for in this Plea Agreement, including in paragraphs II.E, VI.B, and VII.B.

**B.    Recommendations.**

1.   Incarceration Range.

The government may recommend that the defendant be sentenced up to the middle of the applicable guideline range as determined by the Court.

2.   Acceptance of Responsibility

The government will recommend a two-level reduction if the offense level is less than 16, or a three-level reduction if the offense level reaches 16, in the computation of the defendant's offense level if he demonstrates acceptance of responsibility. This includes the defendant meeting with and assisting the probation officer in the preparation of the PSR, being truthful and candid with the probation officer, and not otherwise engaging in misconduct that constitutes obstruction of justice either in the preparation of the PSR or during the sentencing proceeding.

**C.    Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and the Probation Office, including answering any inquiries and rebutting any inaccurate statements or arguments by the defendant, his attorneys, the Probation Office, or the Court. The defendant agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV.    ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements to convict the defendant of conspiring to commit wire fraud in violation of 18 U.S.C. §1349:

1. Conspiracy to commit wire fraud:
    a) There was an agreement between two or more persons to commit wire fraud;
    b) The defendant became a member of the conspiracy knowing at least one of its objects and intending to help accomplish it.
2. Wire fraud:
    a) The defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

6

  b) Statements made as part of the scheme or plan to defraud were material, that is, the statements had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

  c) The defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

  d) The defendant used, or caused to be used, an interstate wire to carry out, or attempt to carry out, an essential part of the scheme or plan.

The defendant understands the nature and elements of the crimes charged in the Indictment in the Startop Case and the Information in the Voyager Case to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorneys.

## V. MAXIMUM SENTENCE

### A. Maximum Penalties.

The maximum sentence that the Court can impose for each count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 is twenty years of incarceration, a fine of $250,000, three years of supervised release, and a special assessment of $100. This makes for a total maximum sentence for two counts of conspiracy to commit wire fraud of forty years of incarceration, a fine of $500,000, six years of supervised release, and a special assessment of $200. By signing this Plea Agreement, the defendant agrees that the Court can order the payment of restitution for the full loss caused by his misconduct. The defendant also agrees that the restitution order is not restricted to the amount alleged in the specific counts to which he is pleading guilty.

### B. Supervised Release Violations.

The defendant agrees that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require him to serve up to two additional years of imprisonment.

## VI. SENTENCING DETERMINATION

### A. Statutory Authority.

The defendant agrees that the Court must consult the USSG and determine a non-binding and advisory sentencing range and consider these factors when determining a final sentence. The defendant

further agrees that the Court will consider whether there is a basis for departure from the sentencing range, either above or below the sentencing range, because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration in formulating the USSG. Finally, the defendant agrees that the Court, after consultation and consideration of the USSG, must impose a sentence that is reasonable under the factors set forth in 18 U.S.C. § 3553(a).

### B. Stipulated USSG Calculations.

The parties agree there is no material dispute as to the following USSG variables and stipulate to the following except as noted below:

///

///

///

1. Startop Case
    a. Base Offense Level: 7.
    b. Loss Amount: The parties have not reached an agreement on the loss amount enhancement and may argue for whatever they believe is appropriate in this regard.
    c. Victim-Related Adjustments: +2 for ten or more victims.
    d. Role in the Offense Adjustments: The parties have not reached an agreement on whether the enhancement for obstruction of justice applies and may argue for whatever they believe is appropriate in this regard.
    e. Acceptance of responsibility: See paragraph III.B.2 above.
    f. Criminal History: The parties estimate, but do not stipulate, that the defendant's criminal history category will be I. If the defendant qualifies as a zero-point offender, the parties agree the defendant would receive an additional decrease of two offense levels.
2. Voyager Case
    a. Base Offense Level: 7.
    b. Loss Amount: The parties have not reached an agreement on the loss amount enhancement and may argue for whatever they believe is appropriate in this regard.
    c. Victim-Related Adjustments: +2 for ten or more victims.
    d. Role in the Offense Adjustments: The parties have not reached an agreement on whether the enhancement for abuse of a position of trust applies and may argue for whatever they believe is appropriate in this regard.

  e. Acceptance of responsibility: See paragraph III.B.2 above.

  f. Criminal History: The parties estimate, but do not stipulate, that the defendant's criminal history category will be I. If the defendant qualifies as a zero-point offender, the parties agree the defendant would receive an additional decrease of two offense levels.

  g. Grouping with Startop offense: The parties have not reached an agreement on how the Startop and Voyager offense may group and may argue for whatever they believe is appropriate in this regard.

 3. Departures or Other Enhancements or Reductions: The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments other than the decrease for "Acceptance of Responsibility," or cross-references. The parties also agree not to move for, or argue in support of, any other departures from the USSG except that the government may move for a departure or adjustment based on defendant's post-plea obstruction of justice.

 4. Parties' Sentencing Recommendations: The government may recommend that the defendant be sentenced to a term of imprisonment up to the middle of the applicable guideline range as determined by the Court and full restitution. The defendant is free to recommend to the Court whatever sentence he believes is appropriate under the 18 U.S.C. § 3553(a) factors.

## VII. WAIVERS

### A. Waiver of Constitutional Rights.

The defendant agrees that by pleading guilty he is waiving the following constitutional rights: (1) to plead not guilty and to persist in that plea if already made, (2) to be tried by a jury, (3) to be assisted at trial by an attorney, who would be appointed if necessary, (4) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed, (5) to subpoena witnesses to testify on his behalf, (6) to confront and cross-examine witnesses against him, and (7) not to be compelled to incriminate himself.

10

**B.     Waiver of Appeal and Collateral Attack.**

The defendant agrees that the law gives him a right to appeal his guilty plea, conviction, and sentence. The defendant also agrees as part of his plea, however, to give up the right to appeal the guilty plea, conviction, and sentence imposed if the sentence does not exceed the statutory maximum for the offenses to which he is pleading guilty. Finally, the defendant agrees that this waiver includes, but is not limited to, any and all constitutional and legal challenges to his conviction and guilty plea, including arguments that the statute to which he is pleading guilty is unconstitutional, and any and all claims that the Factual Basis for Plea is insufficient to support his guilty plea. The defendant gives up the right to appeal any order of restitution that the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant would retain the right to appeal if the sentence imposed by the Court exceeds the statutory maximum or the government appeals the sentence. The defendant agrees that these circumstances occur infrequently and that in almost all cases this Plea Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, he also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. §§ 2255 or 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.E.

**C.     Waiver of Attorneys' Fees and Costs.**

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matters and related allegations.

**D.     Impact of Plea on Defendant's Immigration Status.**

The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which the defendant is pleading guilty. The defendant and his counsel have discussed the fact that the charges to which he is pleading guilty are aggravated

11

felonies, or crimes that are likely to be determined to be aggravated felonies under 8 U.S.C. § 1101(a)(43), and that while there may be arguments the defendant can raise in immigration proceedings to avoid or delay removal, it is virtually certain he will be removed if he is not a United States citizen. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorneys or the Court, can predict to a certainty the effect of his conviction on his immigration status.  The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

///

///

///

## VIII. ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the parties exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to in writing and signed by the parties.

///

///

///

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel:

We have read this Plea Agreement and have discussed it fully with our client. The Plea Agreement accurately and completely sets forth the entirety of the agreement. We concur in our client's decision to plead guilty as set forth in this Plea Agreement.

Dated: 2/18/26

/s/ Valerie Amsterdam
/s/ Jeffrey Hammerschmidt

VALERIE AMSTERDAM
JEFFREY HAMMERSCHMIDT
Attorneys for David Hardcastle

### B. Defendant:

I have read this Plea Agreement and carefully reviewed every part of it with my attorneys. I understand it, and I voluntarily agree to it. I have consulted with my attorneys and fully understand my rights with respect to the provisions of the USSG that may apply to my case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me to enter into this Plea Agreement, and I am satisfied with the representation of my attorneys in this case.

Dated: 2/18/26

/s/ David Hardcastle

DAVID HARDCASTLE
Defendant

### C. Attorney for United States:

I accept and agree to this Plea Agreement on behalf of the government.

Dated: 2/18/26

ERIC GRANT
United States Attorney

*[signature: Joe Barton]*

JOSEPH BARTON
CODY CHAPPLE
Assistant United States Attorneys

# EXHIBIT A

# FACTUAL BASIS FOR PLEA

### A. Startop Case

From January 2023 until at least May 2023, the defendant, David Hardcastle, and his business partner, Andrew Adler, used their business Startop Investments ("Startop") to loan Bitwise Industries ("Bitwise")[1] approximately $20,000,000 based on materially false and fraudulent representations that the principals of Bitwise, Jake Soberal and Irma Olguin, Jr., made to them about Bitwise's financial condition.[2] Hardcastle and Adler funded the loans primarily by syndicating the loans to other participants. In doing so, they altered the original loan documents, and forged Soberal's signature thereon, to make it appear to the participants as though Bitwise was obligated to pay approximately twenty-four percent in annual interest for the loans when, in fact, Bitwise was obligated to pay approximately sixty percent.

Hardcastle and Adler agreed with each to carry out their scheme to defraud and knowingly participated therein. Their false and fraudulent representations regarding the interest rates that Bitwise was obligated to pay for the loans deceived and cheated several of the participants out of money by making the loans appear less risky, and therefore more appealing, to them. Over ten of the participants would not have participated in the loans, or would have participated in the loans on materially different terms, had they known the true interest rates that Bitwise was obligated to pay. Hardcastle and Adler made tens of thousands of dollars in fees for originating the loans and put themselves in a position to make profits from the interest rates that were undisclosed to the participants.

Hardcastle and Adler carried out their scheme to defraud through various means, including by communicating with each other through telephone calls and text messages. Many of these telephone

---

[1] Bitwise was a start-up, technology company headquartered in Fresno County, State and Eastern District of California. Bitwise had a parent company and several other related companies. The companies were all controlled by Jake Soberal, Irma Olguin, Jr., and a board of directors. Therefore, the companies are referred to generally, and collectively, as Bitwise for purposes of this Plea Agreement.

[2] Soberal and Olguin, Jr. were recently convicted of defrauding Bitwise's investors and lenders, including Startop, out of approximately $115,000,000. They were sentenced to eleven years and nine years in prison, respectively.

1  calls and text messages were made while Hardcastle was in Fresno County and Adler was outside of
2  California.  The loans to Bitwise were also funded, at least in part, by interstate wire transfers that
3  originated from outside of California and were deposited into Bitwise's bank accounts opened in
4  Fresno County.
5  Importantly, in May 2023, Bitwise collapsed and the participants in the loans lost all or most of
6  their money.  This was all in violation of 18 U.S.C. § 1349.
7  **B.     Voyager Case**
8  At all relevant times, the defendant, David Hardcastle, resided in Fresno County, State and
9  Eastern District of California, and was a General Partner and Chief Executive Officer at Voyager Pacific
10 Capital Management ("Voyager"), which was a real estate investment firm based in Florida with
11 operations throughout the country that managed assets worth tens of millions of dollars.  Hardcastle was
12 a General Partner in Voyager along with others.  They had previously purchased the General Partnership
13 interest from another individual and continued managing Voyager in the same way that individual had
14 managed it.  In exchange for managing Voyager, they received management fees and other
15 compensation.
16 One of the funds in which Voyager offered participants the opportunity to invest was the
17 Voyager Pacific Opportunity Fund II (the "Fund").  The Fund generated returns for the participants by
18 using their money to acquire residences, land, and tax liens, among other assets, and then renting and
19 selling those assets for a profit.
20 From June 2020 through at least January 2025, Hardcastle and others at Voyager falsely and
21 fraudulently represented to participants in the Fund that their money would be used to acquire
22 residences, land, and tax liens, among other assets, but then used the money to pay promised returns to
23 other participants, for personal investments, and for other improper purposes.  In doing so, they provided
24 fake financial information to the participants that falsely and fraudulently represented the Fund was
25 performing well when the Fund was in a less profitable than reported condition.
26 At times, Hardcastle and others at Voyager sold certain properties in the Fund that were in
27 disrepair or underperforming to themselves and did not disclose these sales to the participants.  The sales
28 were paper sales only and no money changed hands.  Hardcastle and others at Voyager made the sales

because they did not have sufficient capital to maintain or improve the properties and they were prohibited from incurring debt on the properties based on their agreements with the participants. The sales allowed them to artificially inflate the value of the Fund and the participants' shares and therefore continue receiving their management fees and other compensation from Voyager.

Hardcastle and others at Voyager agreed with each other to carry out their scheme to defraud and knowingly participated therein. In doing so, they acted with the intent to deceive and cheat the participants out of their money. The participants would not have made their investments had they known how Hardcastle and others at Voyager were using their money. Ultimately, the Fund was acquired by a third party at a discount and the value of the participants' shares was diminished.

Hardcastle and others at Voyager carried out their scheme to defraud through various means, including by communicating with each other through telephone calls and text messages and causing wire transfers to be made. Many of these calls, text messages, and wire transfers went between Fresno County and places located outside of California. This was all in violation of 18 U.S.C § 1349.

Dated: 2/18/26

/s/ David Hardcastle
DAVID HARDCASTLE
Defendant